2008-1588. Ms. Keneally. May it please the Court. We contend that the District Court has  erred in granting BOCA's motion to dismiss on the pleadings on the basis that we had failed to allege any set of facts that would entitle us to recovery. The first amended complaint is the operative pleading in this matter. The first amended complaint alleges three alternative bases for infringement. First, direct infringement by BOCA Second, joint infringement in which BOCA performs each step of the method claim or in which each step is performed under its direction or control. And third, inducement in which BOCA induces others to infringe by aiding, abetting, or assisting in their infringement. So are you arguing that there's joint infringement here because the steps performed by the user computer are performed under BOCA's direction or control, or are you arguing that the steps are performed by BOCA even though some involve the user's computer? Your Honor, we have alternative theories of infringement here. One is that BOCA performs each step on its own, and one is that the end user's computer under the direction or control of BOCA performs some of the steps that are not performed by BOCA itself. But didn't you argue before the District Court that the direct infringement is carried out as a joint act of infringement? Your Honor, we've pled three alternative bases for relief here. One of the things that we did argue before the District Court is that these acts are completed through a joint infringement theory. Now the defendants contend, and they have improperly led the District Court to believe, that visiting a court's website is required by Claim 17. And if you look in the record at A6 and A7, which is the District Court's that it was relying on whether or not individuals visit the defendant's website under their control as required under this claim. And what it says is, plaintiff has in no way alleged that the remote users are contractually bound to visit the website. It is not alleged that the remote users are defendants' agents who visit the website within the scope of their agency relationship. And it goes on to say that in this case, the patented process cannot start until the remote user visits defendant's website. But if the user's computer, in this case, performs steps of the method, then are you suggesting there can be infringement here by BOCA? Correct, Your Honor. Because? We're suggesting that because every step in that case would be either performed by BOCA or be under its direction or control. But if the user's computer performs the method, how is that performed by BOCA? It's performed under their control because they provide software in which the software permits the sending of data packets in the correct format. And this software is done with asymmetrical processing power capacities and involves compression and subsequent decompression techniques. So we're saying that BOCA then provides this software. The second you access the defendant's website, they download this software, So are you saying that every time a software developer directly infringes method claims every time the software is run by anyone? No, but this software is provided by BOCA. It's BOCA's software. That's what I meant. If software is provided by them, then a software developer is guilty of direct infringement. Well, it's BOCA here that we're asserting would be guilty of infringement. And it's by providing this software, which controls these steps, the claim steps of Claim 17, and that is how we're alleging that there's infringement. There's no dispute here that the patent method does not begin until a user visits the defendant's website. There's no dispute here that the patent wouldn't be infringed unless an individual went to the defendant's website. But what the user does is it initiates this process. The claimed method does not begin this process. The user initiates the process? These claims begin midstream. And in effect, what we're saying is that... You just stated the user initiates the process. The user has to go to the website for the claim to be initiated is what I misspoke. And what I mean is... And then when he does that, he's not under direct control of BOCA. And that's correct. It's his own free will. He goes to that website on his own. We're not alleging that we're controlling them. What we're saying is that once he does go to my website... So who's performing the infringement at that point? At that point, the infringement is occurring by BOCA. And it's BOCA... BOCA is not the user. Because the user goes to the website, and these claims begin... The first step of this claim element, and if you look, it says identifying a query via data input means. Well, you can see that during oral argument below that the patented method does not begin until a computer user visits the defendant's website. And I believe that's consistent with what I'm saying today. The patented method begins after the user has already accessed the defendant's website. So who's infringing at that point? The infringement is a theory of joint infringement. It's either BOCA itself through the software that's downloaded on your computer, and that the joint infringement theory is that it's the user's computer that is performing these steps of the claim. What control is there by BOCA on the user? The control... There isn't control over the user. Well, what is the control? The control is that BOCA is providing this software, and it's specialized software, and the software is controlling the acts which occur on the user's computer. That's not an answer. Where is BOCA's control over the user? What does BOCA do to control the user? Your Honor, respectfully, the claim does not require control over the user. It is well established that a method claim is directly infringed when each and every element of the claim is performed. And here, this claim doesn't begin. The first step is identifying a query. It's not accessing a website. And respectfully, we don't need to control what the user is doing at that point. We don't need to claim every component necessary to enable operation of this device. It's only... But aren't the steps of the claim steps performed by the user? Identifying a query, transmitting it, aren't these user steps? Your Honor, in fact, we disagree with that position. What we're saying, and if you look in paragraphs 8 and 9 of the amended complaint, you will see that we have carefully alleged that these steps are each performed either by BOCA or by the user's computer. And what we've said is that what we do is we access the website. The user's computer is the user. Computers don't operate by themselves. Well, it's this software that's operating. It's this software that's operating on the user's computer. And what we've said here is that, sure, you go to the website. You get there. You access it. And it's not until then that BOCA downloads the software onto your computer. And then you put in a request. You say, I want to check dates of availability. I want to stay here March 25th. And then you click enter. These are acts of the user. You haven't sued the user. Correct, correct.  And then the software recognizes. It identifies a query. And identifying a query is the first step of this claim. And then it inputs that step into the correct. It tells the computer what you're looking for. You're saying the actions are those of the software. Correct, correct. That's the identifying step. That's who completes that step. We respectfully don't believe that we have to assert control over the user. And that is where we believe the district court erred in this case. Your Honor, I know it's similar to these claims are similar to, in fact, it's like the recording device in this courtroom. If the first step of the patent claimed identifying a voice via a microphone, the first method step would be something that would be performed by the equipment. It would be something that would be internal to the system. There would be no need to control the individual that actually turns on that device. But the system can't be a defendant. Pardon me? The system can't be a defendant. Correct, but that would be an infringing device. And, you know, these we feel are this claim is drafted the same way. It's that this claim begins midstream. And our case law requires sometimes control between two parties for there to be joint infringement, right? Correct, Your Honor. And joint infringement is one of the three theories that we've alleged in this case. And so to dismiss this complaint summarily on the pleadings was improper. If you don't have any further questions, I'd like to save my time for rebuttal. We will save it. Mr. Baldrige. Good morning. Tell us who performs the steps in this claim. Well, Your Honor, there's no question this is a joint infringement case. It's the way it was litigated below. And the steps are performed by at least two actors, at least two actors. That would be my client's website, Panthers Boca Resort. And that would be, as the court notes, the end user, which, as the patent states, and that patent is part of the complaint, so it is to be considered on a motion to dismiss. It says identifying a query, inputting a query, transmitting a query. What if Boca sends one of its employees to my house to turn on, to help me and personally start a program that performs the first step? Wouldn't that be direct infringement by Boca? Wouldn't that person be under the direction and control of Boca by virtue of being an employee or an agent of Boca in that instance? Right. So that's infringement. So we have a different situation than what we have in this case and what is alleged here, which is one of the hundred million users of a computer that actually signs onto the Internet and downloads a JPEG image is somehow starting the process of infringement under this poorly drafted patent. But here, Boca's website sends the program over the Internet, and I'm not sure I see why that's so different instead of it sending an employee over to my home. Well, I would say that they might send that program over the Internet, but they only do that as counsel for global patents stated in the motion to dismiss hearing by performing one of the elements of the claim, which calls for inputting the information. Somebody has to perform that first step of inputting the query by firing up the computer and actually exercising his or her own free will, as counsel stated, to actually seek the use of that website. This patent, there's no question, the first three steps are performed at the end user station or by the end user. And this case is actually very simply, in my view, decided under muni auction and some of the district court decisions that followed, such as the Keeley decision, the Intel decision. All this is is about access to a website. And what happened with this patent is it was drafted from the perspective of two actors. And BMC, as this court well knows, says, we're not going to save poorly drafted patents. And patent lawyers out there know that it is always desirable to try to draft a patent from the perspective of one user. What happened here is that we have two parties. We have a situation which is far removed from what's been before the court where there is no relationship, no relationship of legal significance between the end user and my client. But your client sets up this software with a hope and expectation that an end user is going to plug into it. As they did in muni auction, as between the municipalities and the bidders. And in that situation, it was a contained website with contractual obligations, and it wasn't enough. As was done in the Keeley decision, which was a contained website involving real estate data and a contractual relationship, but access was not enough. But why need there be a contractual relationship? If you set up your software in the hope and expectation that people will access it, even without a contractual relationship, someone comes in and accesses it and uses it, and between the two of you, you're performing all the steps, why isn't there infringement? Well, as I understand, and I'm not going to tell the court what it meant by muni auction, the court knows better than me. You can tell us what it means as you read it. You've got some relatively narrow situations to close the loophole where some kind of unfairness would occur. And those exceptions are relatively narrow because you're getting a monopoly in a patent, and the patent holder has some... It's not a monopoly, is it? A right to exclude. A right to exclude. And you are also obtaining... You're also expected to draft that patent carefully. So what the court said was that you've got to be vicariously liable, or there's got to be a contract, or there's got to be an agent, which probably falls well within vicarious liability. I think that's pretty clear from muni auction. There's no allegation of that here, and there is no relationship between the end user and my client. Would the end user then by himself or herself infringe just by going to the website and querying the website? On an independent basis? Yes. No. Why not? Because there's two actors here. The end user is inputting, as the patent says, transmitting and identifying, and the website is downloading. So is the identification step only being done at the central? At the central? I'm sorry, Your Honor? At the central server? No. Where is it being done? The identification of the query is when somebody elects at the end user station to type something into that computer and call for the information. So the end user then could perform all of the steps of Claim 17 and be infringed? I think they could perform the first three steps, and then the actual provision of the information coming from the website is performed on the other side of the equation, which is on the Boca Resource Panthers side of the equation. So, no, I don't think so. I think it requires two actors. And I note that the BMC was concerned about closing this loophole and whether a claim could be drafted from the standpoint of a single user to close the loop. I just note, and if it gives the Court any comfort whatsoever, that there is a reexamination now where this claim is being drafted from the perspective of the single party on my client's side of the equation. I don't know whether that claim is valid or not. I don't think that would give us comfort. Okay. The bottom line is, though, is that at the hearing on the motion to dismiss and in all of the district court proceedings, it was a joint infringement theory that was argued. Is that the only way it can be argued? I'm just trying to figure out if that's the only way it can be argued under the present structure of the claim. I still believe, as I've stated, that that is the only way it can be argued because I think there are two parties in this equation under the patent, to perform the various steps, seven-some-odd steps, of Claim 17. You're saying that Step D could not be done except for the user? I have to get to the patent, Your Honor. Displaying a presentation corresponding to said compressed and uncompressed response on output merits. On output means? Isn't that what the software in fact does, is display? On the Boca Resort Panther side of the equation. That software doesn't input. It doesn't identify. It doesn't, as Mr. Nero said at the hearing, one of the elements of the claim calls for inputting the information. You'd have no way to access this website if you don't turn on the computer, type in the information that you want, and accessing the website. So I think the display side of the equation would come from the Boca Resort Panther side of the equation, whereas Mr. Nero... And not the end user? And not the end user. And I think given the way this was argued, and given the pre-suit demand letter, which there is some dispute over whether the court could properly consider that, but I believe Mr. Naira said that they could. Was that made part of the record? Yes, it was made part of the record, and the court asked Mr. Naira whether it could be considered, and he said it's not going to change anything. He said it's totally consistent with the argument I'm making, and the court did in fact consider it, and that letter says very clearly, explaining the infringement of Step 17A, it says the user of the site identifies a query at a browser or workstation, for example, by typing or moving a mouse pointer. The query is input to the browser or workstation, such as by hitting enter or by clicking the mouse button. That can only be performed at the user station. That cannot be performed by MyClient, Panthers, or Boca Resort, and that's the record before this court. So simply stated, I think it is clear that there are two users. I think that it's clear that there is no legally recognizable relationship between MyClient and those end users, and I think that there is no direction or control over the end user in this circumstance. But there's joint activity, isn't there? I think there is joint activity, yes, sir. Related, each party related to the other by the activity. After the end user performs the initial step of inputting the query, there is interrelated activity, yes, sir. And there can't be joint infringement because of prior holdings? Because of Muni Auction and BMC. And as you know, BMC, the court said, it's got to be such that every step, every step is controlled by the party in MyClient's position, and it's clearly not the case. It's admitted at the trial court level in the oral argument. It is clear from the face of the patent, which is incorporated in this court. In other words, there can never be infringement if you have a user connecting with a piece of software that a defendant has provided because there's not going to be contractual relationships. You plug into an airline's website or a hotel. These things happen all the time. There's no contract between them. There's no control between them either. But there certainly is a joint relationship, which is saying in none of these situations is there jointness because there's no control or contract. I'm afraid it is beyond me to come up with all the possible variations that could exist. I understand there's two of them. But I can tell you one thing. If you drafted this claim properly, there could be infringement. And that's where the answer comes from in BMC. Draft the claim properly. This is a poorly drafted patent. And it's poorly drafted because it is from the perspective of two actors. And I think in this scenario, the scenarios I can come up with, no, not in this situation could some random end user unrelated to Boca Resort surfing the Internet pull down a picture and somehow commit infringement. And I'll tell you right now, I think I committed infringement when I pulled up your website and downloaded the photo of this court. That would fit within their theory of the case. We don't sue anyone. Okay, please don't sue me. But he might. So I don't want to go down that path. That's how simple this is. It's not that simple, is it? I think it is. If the claim were drawn so that there was only one party necessary to infringe, then it would not be that simple. Well, I think probably if it were drawn properly and not done from the perspective of the end user, I don't know whether it would be simple or not. What I do know is we wouldn't be having the debate over joint actors. Would you need to put claims into a patent application to cover both the Boca type of users and the end users? Could you do it in two separate claims? Well, in alternative claims, now you're asking a trial lawyer whether you could do that. My answer to you would be yes, I think so, but do I know what I'm talking about? No, I don't know what I'm talking about. But I think, yes, you could. You could draft alternative claims here and do what I understand from our excellent patent drafters in our group, go with the principle of doing this from the perspective of one side or the other. The better answer might be I don't know. Yeah, the answer is I don't know. And I would say that in the pleadings, we are admitting in the pleadings in this case that there were two actors. So that is the record before the district court, that there were two actors. And the theory that we heard for the first time in some of the appellate briefs, that there's somehow one actor, never came up. You can read the hearing transcript from the motion to dismiss. You can look at the complaint, and you can look at the opposition brief before the district court and decide for yourself if this is a joint infringement case where it is admitted that there are two actors. Thank you. I have nothing further. Thank you, Mr. Baldrige. Ms. Connealy has a little more than five minutes, almost six. I just have a few points. First, as Judge Gallarza pointed out, this claim could be read to be performed by one user, but the end user could perform every step. And as we alleged in the original complaint at A33, which I believe is Paragraph 9, or we also alleged in our opposition to the defendant's motion at the lower court, we've alleged that these claims could be performed by one user. And as you can see in Paragraph 11 of the first amended complaint, which is the operative pleading here, we've alleged inducement. So if you read these claims as all being performed... Didn't Ms. DeNiro say that the end user is not the direct infringer? And now you're saying that the end user could be performing all the steps. Your Honor, I believe that we've pled three alternative theories of liability. I don't believe that's consistent with the way we've pled that statement. And if you read these claims as requiring one user, I think you'll see that we have pled a theory of inducement here in which BOCA would be liable for assisting, aiding, and abetting the user in completing every act of this step. If you don't take that theory as true, we've pled a joint infringement theory. And as Judge Prowse pointed out, it could be a BOCA employee accessing their website in the scope of their employment either in their offices or at the front desk checking availability that would be performing any of these acts if it is that you're going to read these claims as requiring a user control over the user. And third, we've pled that BOCA itself, through the software, performs each and every step of this claim. Well, how does BOCA control the user? The user has the free choice whether to go on the net or not. That's correct. There may be jointness. That's correct. But without control, doesn't our case law knock you out? No, Your Honor, I respectfully disagree. First of all, the control is that if you look at this and you say there has to be control over the user, if it's the way we've pled this complaint, in which we are at the beginning stages of this pleading, we have merely filed the complaint, it was dismissed summarily, you have to accept for purposes of this motion the well-pled facts as true and accept all inferences in our favor. And if you do that, in paragraphs 9 and 10 of the complaint in which we've alleged joint infringement, if you assume, take every inference in our favor, assume it's a BOCA employee performing these steps, and that would be sufficient control under the law. The way we read the law is that for direction and control to be satisfied has to be a theory of vicarious liability. And here we believe we've satisfied that standard. It's not a contractual, it's not agency. Yes, those are indicia of direction or control. And, Your Honor, we believe that through one of the three alternative theories of basis for infringement that we have pled, we are entitled to go back to the district court and we are entitled to discovery. The defendants in this case have not even answered our complaint and it was dismissed summarily. And we believe that this was legal error. Excuse me one second. On your complaint, page 833, paragraph 8, speaks to BOCA with Tana's infringed, claim 17. So that would be direct infringement there, wouldn't it? Pardon me. Let me just get there. Correct, Your Honor. And I misspoke. 834 would be the inducement and that's paragraph 9. Paragraph 9 would be on 834, normally intentionally induced others to infringe. Correct. And that would be if you read this claim as being performed by the user. Entirely by the user. Entirely by the user. And not jointly. Correct. With BOCA. So we'd have to read that claim to say that it could be entirely done by the user independently of the BOCA. Correct. And then BOCA would be liable for inducement in this case. But if it can't be read that way, then you lose. That's incorrect because I believe we've pled three separate theories of liability. And if it's not read that way, it could be read under a joint infringement theory in which it's either each step is performed by BOCA or performed under its direction or control or in which BOCA itself is performing each and every one of these claims. And under one of those three theories, I believe that there was an error occurred when this complaint was dismissed. Thank you very much. Thank you, Ms. Connealy. Take the case under advisement.